UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SABRINA LORAINE MCFARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 6887 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sabrina Loraine McFarland ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Titles II and XVI of the Social Security Act. For the following reasons, Plaintiff's motion [16] is granted, the Commissioner's motion is denied [21]. This case is remanded for further proceedings consistent with this opinion.

I. **Background**

A. **Procedural History and Claimant's Background**

Plaintiff filed an application for disability insurance benefits on August 21, 2012, with an alleged onset date of disability as of August 27, 2010. (Record ("R") 142.) Her initial application was denied on February 19, 2013 and again at the reconsideration stage on September 24, 2013. (R. 116, 117, 140, 141.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 2, 2015. (R. 19.) Plaintiff appeared and testified. (R. 38-74.) Vocational Expert ("VE"), Richard T. Fisher also appeared and offered testimony. (R. 74-95.) On February 23, 2016, the ALJ issued a written decision finding her not disabled within the

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

meaning of the Act and denying Plaintiff's application for Social Security Disability Income ("SSDI"). (R. 19-31.) On April 28, 2016, the appeals council denied Plaintiff's request for Review, thereby rendering the ALJ's decision as the final decision of the agency. (R. 1-6); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994). Plaintiff then filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

B. **Factual Evidence**

The Plaintiff was born November 7, 1970 and has two children aged 24 and 22, who live with her in her apartment. (R. 42-43.) Plaintiff has a high school diploma and worked prior to an accident in 2010 as a cashier and shift supervisor at various businesses, including CVS Pharmacy and K & G Fashion. (R. 44, 291.) After 2010, she worked for short periods of time as a cashier at Moran Foods/Save A Lot and Walmart as well as a babysitter. (R. 48, 291.)

The medical records indicate that the Plaintiff suffers from an L5 pars defect, obesity, and osteoarthrosis of the knee. (R. 22, 110.) Plaintiff also testified that she suffers from anemia, and treats it with iron supplements. (R. 62.) The lower back issues were caused on August 22, 2010, when Plaintiff accidentally slipped and fell while lifting a case of tea while working at CVS Pharmacy. (R. 345.) Treating physician Dr. Anis Mekhail saw Plaintiff at Little Company of Mary Hospital on August 30, 2010, a week after the accident occurred, and for several checkups in September 2010. (R. 345-63, 385-88.)

Dr. Mekhail diagnosed Plaintiff with obesity as well as lumbar strain and referred her for physical therapy three to five times a week, and a MRI. (*Id.*) She underwent the MRI on November 5, 2010, which revealed mild facet hypertrophy in the lumbar spine, L4-5 and L5-S1 disc space narrowing, and disc desiccation with a suggestion of bilateral pars defects, but no evidence of spondylolisthesis. (R. 390.) Plaintiff was discharged from physical therapy on December 12, 2010. (R. 364) Plaintiff returned in February 2011, continuing to complain about

the pain and an epidural injection was recommended. (*Id.*) A year later, in February 2012, Plaintiff again returned but had not received the injection. (*Id.*) Under Dr. Mekhail's recommendation, she received the epidural injection and underwent a CT myelogram and a functional capacity evaluation. (*Id.*)

On November 9, 2011 and December 3, 2011, Plaintiff underwent MRIs of her left and right knees. (R. 680-777.) These MRIs revealed moderate joint effusion and severe chondromalacia, also known as "runner's knee," of the medial compartment in the right knee, and moderate chondromalacia of the medial femoral condyle. (*Id.*) Plaintiff did not return to the University of Illinois regarding her knee pain after she received a corticosteroid injection in the left knee and a referral for physical therapy. (*Id.*)

On March 28, 2012, at the referral of Dr. Mekhail, evaluating physician Dr. Daniel Joda conducted a functional evaluation exam and concluded that the Plaintiff was capable of functioning at the light physical demand level (R. 408-16.) Dr. Joda noted that this conclusion was made despite inconsistent effort shown by the Plaintiff during the exam. (*Id.*) The inconsistencies included failing 7 out of 7 validity criteria for upper extremity hand and pinch grip testing, indicating a sub-maximal effort was given. (R. 409.) Additionally, Dr. Joda noted that he observed that measured abnormal pain behaviors (AROM) were significantly different than observed AROM when in a non-testing situation, possibly due to symptom magnification. (*Id.*) In June 2012, Plaintiff returned to Dr. Mekhail, whose records indicate that she said she could perform her job as a cashier and that she was functioning well. (R. 400.) In August 2012, Dr. Mekhail's records note that Plaintiff's back pain had returned and he recommended pain management. (R. 401.)

Plaintiff underwent two physical consultative examinations ("CE"). (R. 551-57, 560-63.) The first CE was completed by Dr. Dante Pimentel on January 25, 2013, and the second was

completed by Dr. Alexander Panagos on September 13, 2013. (R. 551-57, 560-63.) Dr. Pimentel found Plaintiff tested normally in most aspects and diagnosed migraines, right knee arthropathic, lumbosacral back pain, radicular pain, and obesity. (R. 554.) Dr. Pimentel also found that Plaintiff's ability to lift, carry, handle objects, and carry out work-related activities was mildly impaired. (R. 554.) Later that year, Dr. Panagos found that Plaintiff's musculoskeletal and neurological exams returned normal results and diagnosed spondylolisthesis of the lumbar spine, arthralgias of both knees, chronic migraines, and stable angina. (R. 563.)

The record also indicates that Plaintiff received medical source statements ("MSS") from two physicians. (R. 442-43, 833-34.) The first MSS was provided by Dr. Daniel Cammarano on December 7, 2012. (R. 442-43.) Dr. Cammarano examined Plaintiff once and assessed that she was unable to stand/walk in an eight-hour workday and able to sit for one hour in an eight-hour workday. (R. 442-43.) The second MSS was provided by Dr. Thomas Bilko on December 22, 2014. (R. 833-34.) Two years later, Dr. Bilko saw Plaintiff over the course of three months and assessed that she could stand/walk for zero to one hour in an eight-hour workday and sit for one hour in an eight-hour workday. (*Id.*)

Two State Agency physicians have also reviewed Plaintiff's medical records and supplied assessments of Plaintiff's condition. (R. 100-13, 123-26.) Dr. Lenore Gonzalez filled out an RFC assessment on February 4, 2013. (R. 100-13.) Dr. Gonzalez diagnosed Plaintiff with severe degenerative disc disease, osteoarthritis, and migraines. (R. 100, 110.) Dr. Gonzalez also assessed that Plaintiff could sit for six hours in an eight-hour workday, stand/walk for six hours in an eight-hour workday, lift/carry ten pounds, and should avoid exposure to extreme environmental conditions. (R. 101-13.) The second RFC was provided by Dr. Francis Vincent on September 23, 2013. (R. 123-26.) Dr. Vincent echoed Dr. Gonzalez's findings, with less strict environmental restrictions. (R. 124-26.)

### C. The ALJ's Decision

On February 23, 2015, the ALJ issued a written decision denying Plaintiff disability benefits. (R. 19-31.) As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2016. (R. 21.) At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of August 27, 2010. (*Id.*) At step two, the ALJ found that Plaintiff suffered from three categorical severe impairments: disorders of the back, osteoarthritis and allied disorders, and obesity (20 CFR 404.1520(c) and 416.920(c)). (R. 21-24.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 24-25.) Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work while standing/walking up to 4 hours and sitting up to 6 hours in an 8-hour workday with normal rest periods. (R. 25-29.) The ALJ also found that Plaintiff can be on her feet for about one hour at a time and sit for about two hours at a time, while being unable to work at heights, clime ladders, or frequently negotiate stairs, and only occasionally kneeling or crawling. (*Id.*)

Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff could perform considering RFC, age, education, and work experience in conjunction with the Medical-Vocational guidelines (20 CFR Part 404, Subpart P, Appendix 2). (R. 29-30.) Specifically, the ALJ relied upon VE testimony that Plaintiff could perform the unskilled light exertional jobs of food and beverage order clerk (DOT 209.567-014), telephone quote clerk (DOT 237.367-045), and call out operator (DOT 237.367-014). (R. 30.) Because of this determination, the ALJ found Plaintiff not disabled under the Act. (*Id.*)

---

[2] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

## II.    Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing her past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245

F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

#### A. The ALJ Did Not Err in His Treatment of the Treating Physician's Opinion

Plaintiff argues in her memorandum that the ALJ's decision should be reversed because he erred in his RFC findings. (Dkt. 17 10.) Plaintiff argues that Dr. Bilko is a treating physician and the ALJ failed to develop the record with respect to Plaintiff's three months of care under Dr. Bilko. (Dkt. 17 10.) Plaintiff further argues that the ALJ erred in his decision not to grant Dr. Bilko's assessment the controlling weight due to treating physicians. (Dkt. 17 11-13).

Regarding Plaintiff's argument that the ALJ failed in his duty to develop the record, it is correct that the ALJ "has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning." See *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). However, both parties must make reasonable efforts to bring forward all information is that impacts an assessment of Plaintiff's disability status. The Plaintiff must submit all evidence in its entirety that relates to whether they are disabled, if this evidence is not supplied, the ALJ will decide based on the information made available after making a reasonable effort to help acquire the records. (20 C.F.R. §§ 404.1512,

404.1516, 404.1545(a)(3).) If there was further information that would impact a determination of disability, beyond what was covered in the assessment, then Plaintiff had a duty to provide it. (*Id.*) Plaintiff failed to provide this evidence, or inform the ALJ of its significance. (R. 832.) Without a reason to believe that acquiring the records would have provided any further information, The ALJ relied on the submitted assessment as a representation of the reasoning behind Dr. Bilko's opinion.

The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). A treating physician's opinion is given controlling weight because "a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Otherwise, the ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

When an ALJ decides for good reasons not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors. These factors include the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. Yurt v. Colvin, 758 F.3d at 860; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 404.1527(c), 416.927(c). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss

8

each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

The ALJ does not appear to dispute that Plaintiff's three months of care under Dr. Bilko grants him a treating physician status, which would typically grant his opinion controlling weight. (R. 28, 20 C.F.R. § 404.1527(d)(2)). However, a treating source's opinion is entitled to controlling weight only when it is "well-supported" and "not contradicted by other evidence in the record." 20 C.F.R. 404.1527. Even if Dr. Bilko is considered a treating physician, the ALJ provided enough information to support "the grounds for [his] decision" not to grant the opinion a controlling weight. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

The ALJ found that Dr. Bilko's opinion is not well-supported, he points out that the assessment "fails to indicate how often he has seen the [Plaintiff] and what type of treatment the [Plaintiff] has undergone under his care." (R. 28.) Also, not represented in Dr. Bilko's assessment is any information on what records or examinations were relied upon "as objective explanation for the severe limitations they assess other than the [Plaintiff's] subjective complaints." (*Id*.) The Court believes these qualify as "good reasons" for the ALJ's decision not to give controlling weight to Dr. Bilko's opinion.

Having decided that Dr. Bilko's opinion would not be given controlling weight, the ALJ was required to consider the factors listed above in determining what weight to accord the treating physician's opinion. Although the ALJ did not perform a formal discussion of each of these factors, the ALJ sufficiently demonstrated that he was aware of those factors and had considered them. The ALJ mentioned the length and nature of the treating relationship between Plaintiff and Dr. Bilko. (R. at 28.) He also noted that Dr. Bilko's opinion was devoid of analysis of any examination Dr. Bilko had undertaken and offered "no objective explanation for the severe limitations [he] assess[ed];" this demonstrates the ALJ's awareness that the relevant

factors include a discussion of the types of tests performed by the treating physician. (R. at 28.) The ALJ also found that Dr. Bilko's opinion is significantly contradicted by other evidence in the record, and that "[t]here is no objective evidence in the records to support these findings." (*Id.*). There are none of the "physical signs to support such limitations" and "[l]ongstanding treating physicians … have not opined the [Plaintiff] was disabled, or assessed a functional capacity that would preclude the claimant from engaging in basic work activities on a sustained basis." (*Id.*) The ALJ found that there is not sufficient support of Dr. Bilko's opinion, and was justified in his decision not to grant it controlling weight. (*Id.*)

The only remaining question is whether the ALJ has property treated all evidence in the record. Plaintiff argues that the ALJ did not consider the complete record of findings offered by longstanding treating physician, Dr. Mekhail, when making his determination of disability. (Dkt. 17 13). If the ALJ failed to consider the full record then this would be an example of "cherry-picking" only medical evidence that supports his conclusion, which is a practice that we have "repeatedly forbidden." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In his opinion, the ALJ directly refers to the two findings offered by Plaintiff as being neglected. (R. 22.) The first is a L5 pars defect diagnosed after a November 5, 2010 MRI that showed disk space narrowing but no evidence of spondylolisthesis. (Dkt. 17 13.) In step 3 of his analysis, the ALJ accounted for the L5 pars defect in his determination that Plaintiff suffered from various severe disorders of the back. (R. 22.) The ALJ further noted that "Dr. Mekhail opined this could be the cause of her [lower back] symptoms." (*Id.*)

Plaintiff also argues that the ALJ neglected to consider Plaintiff's persistent pain that was

consistently present in Dr. Mekhail's records. (Dkt. 17 13.) The ALJ does explicitly consider Plaintiff's pain in his assessment of her disability status, he references Plaintiff's pain and need for pain medication fifty-two times throughout his determination of disability. (R. 21-28.) The ALJ opines, "that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause her pain and that she does have vocationally relevant limitations." (R. 28.) The ALJ goes on to fully detail the evidence that supports his determination that, despite the pain, she is not disabled under the terms of the statute. (R. 28-29.) The ALJ was clearly not cherry-picking only evidence from the record that supported his conclusion, and his analysis of Plaintiff's disability status was soundly supported by substantial evidence.

### B. The ALJ's RFC Findings Are Not Supported by Substantial Evidence

Plaintiff also claimed un-reconciled inconsistencies between the RFC found by the ALJ and the opinions of two State Agency physicians. (Dkt. 17 13.) The ALJ granted "significant weight" to the opinions of Dr. Gonzalez and Dr. Vincent, whose opinion differed from the RFC by including environmental restrictions caused by Plaintiff's conditions. (R. 25-29, 100-13, 124-26.) Dr. Gonzalez's opinion restricted Plaintiff from working in environments with extreme cold, extreme heat, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards. (R. 100-13.) Dr. Vincent's opinion restricted Plaintiff from working in environments with noise or hazards. (R. 124-26.) Plaintiff argues that the ALJ did not properly "build an accurate and logical bridge from the evidence to her conclusion." (Dkt. 17 14.)

In granting "significant weight" to the State Agency Physicians' assessments, "the administrative law judge is not required to explain in the decision the weight he or she gave to the prior administrative medical findings in the claim." 20 C.F.R. § 404.1527(e). However, the regulations require that ALJs consider all of the factors discussed in the preceding section "in deciding what weight we give to *any medical opinion.*" 20 C.F.R. § 404.1527(c) (emphasis

added). While the ALJ is "not required to address every piece of evidence or testimony presented, [he] must provide a 'logical bridge' between the evidence and the conclusions." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Part of that logical bridge between the evidence (*i.e.*, the state agency reviewers' opinions) and the ALJ's conclusion (*i.e.*, that the state agency reviewers' opinions were entitled to "significant weight") is an examination of the factors specifically outlined in the regulations.

The ALJ's discussion of these opinions is, in its entirety, as follows:

> I have also considered the assessment and opinions of the State Agency physicians and have accorded them significant weight. These assessment (sic) are supported by the totality of the medical records and are not contradicted by any of the credible opinions and assessments more thoroughly explained above.

(R. at 29 (internal citations omitted).)

Because the ALJ granted "significant weight" to these assessments, he should have outlined in his opinion his rationale for excluding these environmental restrictions in the RFC, and therefore provided the "logical bridge" to his conclusion. The conclusory discussion of the Stage Agency reviewers' opinions and failure to follow the requirements of the regulations relating to opinion evidence constitute a failure on the part of the ALJ to build a "logical bridge." This constitutes error that requires remand.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion [16] is granted, the Commissioner's motion [21] is denied. This case is remanded for further proceedings consistent with this opinion.

Entered: 9/18/2017

_____
U.S. Magistrate Judge, Susan E. Cox